Ron Clark, Senior District Judge
After Defendant Southern Company Services, Inc. terminated Plaintiff Brandon *692 Tatum while he was on leave, Plaintiff brought claims for (1) interference with his leave under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (the "FMLA"), (2) retaliation for his FMLA leave, (3) equitable estoppel, and (4) breach of contract based on Southern Company's FMLA policy. Mr. Tatum argues that he was covered by the FMLA not because he was an "eligible employee" under the FMLA, but because Southern Company is equitably estopped from denying him FMLA coverage based on its representations and his detrimental reliance.
Southern Company filed a Motion for Summary Judgment, and Mr. Smith filed a Motion for Partial Summary Judgment. It is uncontested that Mr. Tatum is not eligible for FMLA coverage because he works at a location that has less than 50 employees and Southern Company has no other place of employment within 75 miles. Mr. Tatum fails to show a genuine issue of material fact as to his detrimental reliance on Southern Company's representations about its FMLA policy so Southern Company is not equitably estopped from denying him FMLA coverage. As to his breech of contract claim under Texas law, Mr. Tatum presents no evidence that he had an employment contract with Defendant. He points to Southern Company's FMLA policy, but, as a matter of Texas law, that policy is not a contract. Southern Company's Motion for Summary Judgment [Dkt. #19] is granted and Mr. Tatum's Motion for Partial Summary Judgment [Dkt. #20] is denied.
I. Background[1]
Mr. Tatum worked as an operations technician at Defendant's biomass power generation facility near Cushing, Texas (the "Nacogdoches Plant") from November 14, 2011 until his termination on February 2, 2017. The Nacogdoches Plant has never had 50 or more employees working at the site and is not located within 75 miles of another Southern Company facility. Southern Company's FMLA Policy states that it "will provide eligible employees job-protected leave for certain medical and family-related reasons" and defines "eligible employees" as those who "have worked for the Company at least a total of twelve (12) months and have worked at least 1,250 hours during the twelve (12) months prior to the start of FMLA leave." [Dkt. #16, Ex. A]. The last sentence of the FMLA Policy states: "Nothing in this policy shall give rise to any contractual rights to employment, benefits or other terms and conditions of employment." The FMLA Policy is silent on the approval process for requested FMLA leave and does not provide a place for an employee to sign the policy. [Dkt. #16, Ex. A].
Throughout his years at the Nacogdoches Plant, Southern Company counseled Mr. Tatum multiple times about displaying professional behavior towards his colleagues and management. In 2013, Mr. Tatum received a "Needs Improvement" year-end performance evaluation rating. The 2013 evaluation noted that Mr. Tatum "could benefit by knowing his audience a little better." [Dkt. #19, Ex. 5 at 6]. Then, in Mr. Tatum's 2015 year-end evaluation, Mr. Tatum's manager noted that "the 'Behaviors Expected' were not met" and that he had "discussed [Mr. Tatum's] using [sic] of profanity on multiple occasions including his Mid-Year." [Dkt. #19, Ex. 6 at 6]. The evaluation further noted that Mr. Tatum "should be aware of his audience and the language he chooses to use" and that Southern Company "expect[s] [Mr. Tatum] to show more evidence of self-motivation *693 while demonstrating professional performance in his daily job activities." [Dkt. #19, Ex. 6 at 1]. Mr. Tatum received an overall year-end performance rating of "Needs Improvement" for 2015.
In November 2016, Mr. Tatum repeatedly interrupted a safety discussion led by maintenance team leader Chris Honeycutt, culminating in Mr. Honeycutt asking Mr. Tatum to stop interrupting so he could conclude the meeting. Due to Mr. Tatum's behavior and outbursts during the November 2016 safety discussion, Southern Company issued Mr. Tatum a Level 1 Discipline on December 16, 2016. Although Mr. Tatum signed the Level 1 Discipline form and agreed to "identify and resolve [the] issues that led up to this," he appeared to challenge this disciplinary action at a late 2016 employee meeting by telling a story from the Bible where Jesus stated, "[h]e that is without sin among you, let him first cast a stone."
Mr. Tatum exhibited similar behavior in 2017. On January 20, 2017, Mr. Tatum made an unprofessional, sarcastic remark about coworker Scott Dial over the plant-wide radio. Mr. Dial reported the incident to his and Mr. Tatum's supervisor, Nicole Jackson, and Southern Company subsequently asked Mr. Tatum to meet with plant manager Ron Ray, Ms. Jackson, and Operations and Maintenance Manager, Terry Jenkins. During the meeting, Mr. Ray discussed the inappropriateness of Mr. Tatum's Bible story during the late 2016 meeting and suggested that Mr. Tatum talk to his coworkers in a one-on-one environment to resolve any issues. Mr. Tatum disagreed and believed the morning meeting was an appropriate place to have that conversation because everyone needed to hear it. Mr. Ray also warned Mr. Tatum that his sarcastic radio remark was "not appropriate and not a good way to foster teamwork." Again, Mr. Tatum disagreed. Mr. Ray and Mr. Jenkins also spoke to Mr. Tatum about safety concerns he previously raised concerning the quality of pipe welds and QAQC (quality assurance and quality control). Although both informed Mr. Tatum that a Southern Company welding expert, who sat on the board for the American Society of Mechanical Engineers, had approved the manner in which the welds were tested, Mr. Tatum continued to insist that the welds were not proper, he was right, and others were wrong. The meeting ended around noon when Mr. Tatum had to leave for a previously scheduled doctor's appointment. After the meeting, Mr. Ray contacted Human Resources about the possibility of escalating Mr. Tatum's discipline from a Level 1 to a Level 3. Separately, Mr. Tatum called the Southern Company Compliance Hotline at approximately 12:30 p.m. and alleged that the management team was harassing and retaliating against him for reporting safety concerns.
After meeting with him on January 20, 2017, Mr. Tatum's doctor concluded that Mr. Tatum "need[ed] to take some time off work to reduce stress and anxiety" to get his blood pressure under control. [Dkt. #19, Ex. 14 at 2]. During the appointment, Mr. Tatum expressed that he was "under a lot of stress both at work and in his personal life ...." [Dkt. #19, Ex. 14 at 2]. Mr. Tatum also stated that "recent issues ... could terminate his employment," which made him apprehensive because "losing his job would hinder his custody battle for his daughter." [Dkt. #19, Ex. 14 at 2]. His doctor concluded that he needs to be "off work for 1 mos [sic]" and instructed Mr. Tatum "to bring FMLA paperwork to office if needed." [Dkt. #19, Ex. 14 at 2]. Mr. Tatum took these instructions to mean his doctor "instructed him to cease work immediately until his blood pressure levels reached a normal range." [Dkt. #16 at ¶ 54].
*694 Shortly after his doctor's appointment, Mr. Tatum called Ms. Jackson at approximately 3:00 p.m. to notify Southern Company that he intended to take FMLA leave. Later that day, another Southern Company employee delivered the requisite FMLA paperwork to Mr. Tatum. Ms. Jackson informed Mr. Ray that Mr. Tatum had requested FMLA leave.
At approximately 5:00 p.m. on January 20, 2017, after Mr. Tatum had informed Southern Company that he intended to take FMLA leave, Mr. Tatum sent two text messages to Ms. Jackson that alleged that he and coworker Mack Finn had observed a potentially fatal safety risk created by coworker Wayne Goodman on or around December 17, 2016. Mr. Tatum also texted three photos he had taken with his cell phone on or around December 17, 2016 while the work was in progress.
Three days later on January 23, 2017, Ms. Jackson met with Mr. Finn to discuss the safety incident Mr. Tatum raised in his text messages. Mr. Finn expressed that he did not think Mr. Goodman's action created a safety concern or that it was against Southern Company rules. Mr. Finn also stated that Mr. Tatum did not express any safety concerns at the time and instead told him that he was taking photos for "job security." [Dkt. #19, Ex. 16 at 14:16-22; 15:13-20]. Ms. Jackson issued an Operations Bulletin three days after this discussion, and Mr. Tatum alleges this Operations Bulletin addresses the alleged safety issue he raised in his text messages. [See Dkt. #22, Ex. B].
Four days later on January 26, 2017, Mr. Tatum's healthcare provider completed the FMLA paperwork and faxed it to Southern Company. Southern Company then emailed Mr. Tatum on February 1, 2017, informing him that "Brandon Tatum's FMLA request has been received. Per review, you are ELIGIBLE for FMLA. No additional action is due on your part for the eligibility determination. The determination regarding FMLA approval/denial is pending."[2]
On February 2, 2017, Mr. Tatum met with Mr. Ray at Mr. Ray's invitation, and Southern Company terminated Mr. Tatum's employment during the meeting. Southern Company contends it based Mr. Tatum's termination on a "body of evidence" that he could not or would not attempt to conduct himself in an appropriate professional manner, including several employees expressing concerns about working with Mr. Tatum, untimely reporting a potential safety concern, and Southern Company's futile attempts to correct Mr. Tatum's behavior. According to Southern Company, "Mr. Tatum's behavior made it clear to management that he was either unwilling or unable [to] meeting Southern Company's expectations."
Approximately six months after his termination, on July 31, 2017, Mr. Tatum filed his complaint in this Court, alleging claims for (1) FMLA interference and (2) FMLA retaliation. [Dkt. #1].
Two days after filing his complaint, Mr. Tatum submitted a statement to the U.S. Occupational Health and Safety Administration ("OSHA"). In the OSHA statement, Mr. Tatum alleges that it is his "firm belief that [his] termination was not for the given reason by [Defendant], but in fact was in retaliation for [his] participation in protected *695 actions and rights under the OSH Act of 1970, section 11c." Mr. Tatum's OSHA statement does not mention his belief that Southern Company terminated him in retaliation for his request to take, or for taking, FMLA leave or that Southern Company interfered with his FMLA rights. Mr. Tatum signed and dated the OSHA statement beneath the paragraph that stated:
I have read and had the opportunity to correct this statement consisting of 8 handwritten pages, and these facts are true to the best of my knowledge and belief. Public law 91-596, Paragraph 17(g) and 18 U.S.C. § 1001 make it a criminal offense to knowingly make a false statement or misrepresentation in this statement.
Seven months after filing his original complaint, Mr. Tatum amended his complaint to include two additional claims: (3) Southern Company is equitably estopped from denying Mr. Tatum his rights under its FMLA Policy and the FMLA; and (4) breach of contract based on Southern Company's failure to provide Mr. Tatum with up to twelve work weeks of unpaid leave as specified in its FMLA policy. [Dkt. #16]. Mr. Tatum did not allege any claims related to OSHA in this Amended Complaint or in any subsequent filings, including the Joint Final Pretrial Order. [Dkt. #33].
On March 20, 2018, Southern Company filed a motion for summary judgment as to all claims, and Mr. Tatum filed a partial summary judgment motion as to his FMLA claims only and not his breach of contract claim. [Dkts. ## 19 & 20]. Mr. Tatum attached an affidavit by him, dated March 20, 2018, to his motion for partial summary judgment (the "March 20 Affidavit"). [Dkt. #20, Ex. 4]. Mr. Tatum then attached a different affidavit by him, dated April 11, 2018, to his response to Southern Company's Motion for Summary Judgment (the "April 11 Affidavit"). [Dkt. #22, Ex. 1]. Southern Company filed a timely response to Mr. Tatum's Motion for Partial Summary Judgment and Brief in Support. [Dkt. #21]. Both parties then filed timely replies and sur-replies. [Dkts. ## 23-26].
II. Summary Judgment Standard
Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a) ; United States ex rel. Jamison v. McKesson Corp. , 649 F.3d 322, 326 (5th Cir. 2011). A dispute is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material when it is relevant or necessary to the ultimate outcome of the case. Id.
The movant has the burden to identify "each claim or defense-or the part of each claim or defense-on which summary judgment is sought." FED. R. CIV. P. 56(a). "If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'Ship , 520 F.3d 409, 412 (5th Cir. 2008) (citing Celotex Corp. v. Catrett , 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ). The movant must support its assertion by "citing to particular parts or materials in the record ... showing that the materials cited do not establish the ... presence of a genuine dispute, or [showing] that the adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The citations to the summary judgment evidence should be specific. See *696 Smith v. United States , 391 F.3d 621, 625 (5th Cir. 2004) (citing Celotex , 477 U.S. at 325, 106 S.Ct. 2548 ). Summary judgment must be denied when the movant fails to meet its initial burden, regardless of the nonmovant's response. Little v. Liquid Air Corp. , 37 F.3d 1069, 1075 (5th Cir. 1994).
If the movant satisfies its burden, the burden then shifts to the nonmoving party to show that specific facts exist over which there is a genuine dispute. Id. (citing Celotex , 477 U.S. at 325, 106 S.Ct. 2548 ). Like the movant, the nonmovant must satisfy its burden through specific citations to the summary judgment evidence. See FED. R. CIV. P. 56(c)(1) ; Smith , 391 F.3d at 625. "Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." Ramsey v. Henderson , 286 F.3d 264, 269 (5th Cir. 2002) (internal quotations omitted).
In considering the summary judgment evidence, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods. , 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Summary judgment is proper only if the record, viewed in the light most favorable to the nonmovant, could not lead a rational trier of fact to find for the nonmovant. Kunin v. Feofanov , 69 F.3d 59, 61 (5th Cir. 1995). Conversely, if the fact finder could reasonably find in favor of the nonmovant, summary judgment is improper. Id.
III. Discussion
a. The Court strikes portions of Mr. Tatum's April 11 Affidavit because they are conclusory, unsubstantiated, and/or contradict the prior March 20 Affidavit.
The Fifth Circuit has long recognized the sham affidavit doctrine. See BLS Joint Venture v. Bank Home Savings Assoc. , 985 F.2d 556, 1993 WL 35859 at *4 (5th Cir. 1993). A nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment. Doe ex rel. Doe v. Dallas Indep. Sch. Dist. , 220 F.3d 380, 386 (5th Cir. 2000). Further, an affidavit used to oppose a motion for summary judgment must "set out facts that would be admissible in evidence." FED. R. CIV. P. 56(c)(4).
In its Reply, Southern Company objects to the April 11 Affidavit and moves to strike the affidavit in its entirety because it is a sham affidavit that "conflicts with Plaintiff's deposition testimony and contains unsubstantiated assertions and speculation." Southern Company specifically objects to paragraphs 8, 9, 10, 14, and 16, and argues that (1) Mr. Tatum "did not testify in his deposition that he could have or would have forgone the medical leave his doctor prescribed, despite many opportunities during his deposition to do so"; (2) Mr. Tatum's Motion for Partial Summary Judgment, filed on the same day as Southern Company's Motion for Summary Judgment, "specifically addresses detrimental reliance and yet does not mention any of the points raised in his [April 11] Affidavit;" and (3) "[p]erhaps it is no coincidence that Plaintiff submitted this [April 11] Affidavit after Southern Company filed its Motion for Summary Judgment that pointed out this very deficiency." (original emphasis).
The Court agrees and finds that the reliance actions asserted in the April 11 Affidavit are contradictory to those asserted in the previously filed March 20 Affidavit and that the timing of when Mr. Tatum asserted such actions is suspect. The March 20 Affidavit asserts no fewer than four times that had Mr. Tatum known he *697 was not covered by the FMLA, he would not have taken a described action-but only as to his actions after he notified Southern Company that he wanted to take FMLA leave. [Dkt. #20, Ex. 4 at ¶¶ 18, 21, 23 & 25]. Nowhere in the March 20 Affidavit does Mr. Tatum assert that he would not have taken leave or would have returned to work early had he known he was not covered by the FMLA. To the contrary, after stating his doctor instructed him to "cease work until his blood pressure levels reached a normal range" and that he had obtained a work release, Mr. Tatum, in the very next sentence, describes his FMLA leave request call to Ms. Jackson. [Dkt. #20, Ex. A at ¶¶ 15 & 16]. If Mr. Tatum did consider Southern Company's FMLA representations before making that call, a natural place to note this consideration would be in-between receiving his doctor's orders and making the call to Ms. Jackson. Instead, Mr. Tatum makes no mention of any consideration of Southern Company's FMLA representations before making that call-either in that paragraph or anywhere else in his March 20 Affidavit. Mr. Tatum's earlier pleading and other evidence also indicate Mr. Tatum understood his doctor's instructions to mean he needed to stop working immediately and could only return after his blood pressure was under control. [Dkt. #16 at ¶¶ 54 & 59; Dkt. #19, Ex. 17 at 7; Dkt. # 20, Ex. A at ¶ 15].
On the same day that Mr. Tatum filed his March 20 Affidavit, Southern Company filed its Motion for Summary Judgment that highlighted the deficiency in Mr. Tatum's "detrimental reliance" argument. Prior to Southern Company filing its Motion for Summary Judgment, Mr. Tatum never presented evidence-by affidavit or otherwise-or even alleged that he would have disobeyed his doctor's order and not immediately taken leave from work or returned to work earlier but for Southern Company's representation that he was entitled to FMLA leave. It is only after Southern Company underscored the lack of evidence showing his detrimental reliance that Mr. Tatum submitted the April 11 Affidavit that asserts-no fewer than five times-that had he known he was not covered by FMLA, he would have never taken leave or would have returned to work early. [Dkt. #22, Ex. A at ¶¶ 8, 10, 12, 14, 16].
Mr. Tatum fails to address the discrepancies between the April 11 Affidavit and the March 20 Affidavit. Instead, Mr. Tatum boldly proclaims that the April 11 Affidavit "does not create a dispute of material fact, rather it adds to the undisputed record." (original emphasis). Yet the only evidence Mr. Tatum cites in his Response for his assertion that "the record shows that had Mr. Tatum known that he was not covered by the FMLA, he would have returned to work" is his April 11 Affidavit. [Dkt. #22 at 4]. Although Mr. Tatum argues that had he known "that he was not covered by the FMLA, he would have returned to work, and would have had the opportunity to attend the [January 26, 2017 Operations Bulletin] meeting and clarify SCS's mistake," he cites no evidence for these conclusory statements. Neither the March 20 Affidavit nor the April 11 Affidavit mentions this Operations Bulletin or the meeting. The April 11 Affidavit contains a conclusory sentence that could be tangentially related: "Had I known or suspected that supervision at Plant Nacogdoches would have and did address the safety concerns I raised to Ms. Jackson, and had I known that I was not protected under the FMLA, I would have returned to work."
In his Sur-Reply, Mr. Tatum cites to a Southern Company "Equipment Clearance Form" (the "Equipment Clearance Log"). It does not establish that Mr. Tatum would *698 not have taken FMLA leave or would have come back early from that leave but for Southern Company's FMLA representations. [See Dkt. #20, Ex. 10]. The Equipment Clearance Log instead shows that Mr. Tatum completed clearance instructions on January 18, 2017, which is wholly unrelated to his medical conditions and the FMLA.
Beyond the unexplained discrepancies between the Tatum affidavits, and the timing of Mr. Tatum's first-time assertion of helpful reliance facts, many of the "facts" Mr. Tatum asserts in the April 11 Affidavit are unsubstantiated, conclusory statements. For instance, although Mr. Tatum repeatedly proclaims that he would not have taken leave or "would have pursued other options" for his medical condition had he known the FMLA did not cover him, these contentions are merely conclusory statements untethered to facts. Mr. Tatum does not present evidence or even assert, that he explored other options or asked his doctor about alternative remedies if he could not take time off from work. He also did not present evidence or assert that he could have made arrangements to return to work early or was physically capable of returning to work early. Without more, Mr. Tatum's bald assertions are not enough. Gossett v. Du-Ra-Kel Corp. , 569 F.2d 869, 872 (5th Cir. 1978) ("[B]ald assertions of ultimate facts are ordinarily insufficient to support summary judgment.").
Accordingly, the Court strikes the following from the April 11 Affidavit [Dkt. #22, Ex. A]:
Paragraph 7, first sentence: "I reasonably relied on Southern Company's indications to me that I was protected by the FMLA."
The Court strikes "reasonably" because it is merely his self-serving description of his alleged "reliance," with no supporting evidence that the reliance was "reasonable."
Paragraph 8: "Had I known that my job was not protected by the FMLA, and considering what Mr. Ray told me, I would have returned to work immediately after my medical provider's appointment in order to demonstrate to Mr. Ray that I was committed to improving my performance and to save my job."
The Court strikes this because it is conclusory and irrelevant. It is an unsupported statement that he would have promised to improve his performance and do what he had failed to do for months. There is no evidence that Defendant would have been required to accept such a statement, or given his history that it would have been likely to do so. It also contradicts Mr. Tatum's March 20 Affidavit.
Paragraph 10: "Had I known that my leave was not protected leave under the FMLA, I would have made arrangements to return to work earlier in violation of my healthcare provider's orders and would have pursued other options for my medical condition that would not have required leave."
The Court strikes this because it is conclusory, unsubstantiated, and contradicts Mr. Tatum's March 20 Affidavit.
Paragraph 11, first sentence: "I reasonably relied on Southern Company's many indications that I was covered by the FMLA."
The Court strikes "reasonably" because it is merely Mr. Tatum's self-serving description of his alleged "reliance," with no supporting evidence that the reliance was "reasonable."
Paragraph 12: "Because I thought that my job was protected, I did not return to Plant Nacogdoches until February 2, 2017 when Mr. Ray asked me to come in 'just to talk.' "
*699 The Court strikes this because it is conclusory, and contradicts Mr. Tatum's March 20 Affidavit.
Paragraph 14: "Had I known that my job was not protected under the FMLA and given Mr. Ray's commitment to me, I would have immediately returned to work following my medical appointment in order to put my commitment to improving my work relationships into practice and to save my job."
The Court strikes this because it is conclusory, and contradicts Mr. Tatum's March 20 Affidavit.
Paragraph 15, last sentence: "It was clear at the meeting on February 2, 2017 when I was terminated that Mr. Ray was not interested in hearing my point of view."
The Court strikes this because it is conclusory.
Paragraph 16, first sentence: "Had I known or suspected that supervision at Plant Nacogdoches would have and did address the safety concerns I raised to Ms. Jackson, and had I known that I was not protected under the FMLA, I would have returned to work."
The Court strikes this because it is conclusory, and contradicts Mr. Tatum's March 20 Affidavit.
Alternatively, even if considered, the Court finds that these statements by Mr Tatum are irrelevant to the case. In paragraphs 7 and 11, Mr. Tatum asserts that he relied, in some unspecified way, on Southern Company's "indications" that he was covered under the FMLA. In paragraphs 8, 10, 12, and 14, Mr. Tatum asserts if he had known he was not covered under the FMLA, he would not have taken time off. As discussed in more detail below, Southern Company did not terminate Mr. Tatum for taking time off, so the fact that he did take time off, for any reason, raises no genuine issue of material fact. Although paragraph 16 might be relevant to a due process claim, Mr. Tatum was an at-will employee of a Texas company and thus due process was not required for termination. Further, Mr. Tatum did not raise such a claim in his original complaint, amended complaint, or in any of the summary judgment pleadings. In the same paragraph, Mr. Tatum also claims that if he had known his supervisor was going to discuss safety issues, he would have returned to work had he known he was not covered by the FMLA. This is a non-sequitur. Being on FMLA leave is not a magic shield against termination for reasons not connected with the employee's leave. See Mauder v. Metro. Transit Authority of Harris Cty. , 446 F.3d 574, 585 (5th Cir. 2006) (affirming summary judgment in favor of employer because employee was terminated for performance issues raised prior to employee requesting FMLA leave); Richardson v. Monitronics Int'l , 434 F.3d 327 (5th Cir. 2005) (affirming summary judgment in favor of employer because the employer articulated a legitimate, non-FMLA related reason, a lengthy history of attendance problems, for terminating the employee).
b. Because Mr. Tatum failed to show a genuine issue of material fact as to his detrimental reliance, Southern Company is not equitably estopped from asserting a non-coverage defense and Mr. Tatum's FMLA claims are thus dismissed.
The FMLA entitles eligible employees to take up to 12 work weeks of unpaid leave annually for a variety of reasons, including a serious health condition that makes the employee unable to perform the functions of their job. 29 U.S.C. § 2612(a)(1)(d). Subject to exceptions not applicable to this case, any eligible employee who takes leave under § 2612 is entitled *700 to return from such leave and be restored to the position of employment held when the leave commenced, or be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. Id. § 2614. An employee who is employed at a worksite at which, or within 75 miles of which, the employer employs less than 50 employees is not considered an "eligible employee" under the FMLA. Id . § 2611(2)(B)(ii). The right to take FMLA leave and return to work is not so broad as to prevent an employer from taking disciplinary action, including termination, on grounds other than the taking of leave. See Mauder , 446 F.3d 574 at 585.
However, even if an employee is not an FMLA "eligible employee," an employer may be equitably estopped from asserting a "non-eligible employee" coverage defense. An employer is equitably estopped from asserting such a defense if the employee shows that (1) the employer, even if without intent to deceive, made a "definite but erroneous representation" to the employee that she is an "eligible employee" and entitled to leave under the FMLA; (2) the employer had reason to believe that the employee would rely upon that representation; (3) the employee reasonably relied on that representation; and (4) the employee took actions to her detriment based on that representation. See Minard v. ITC Deltacom Commc'ns, Inc. , 447 F.3d 352, 359 (5th Cir. 2006).
Mr. Tatum does not assert that he was covered under the FMLA because he was an employee at a workplace with more than 50 employees or that he worked at a workplace located within 75 miles of another site with fifty or more employees. Instead, Mr. Tatum argues Southern Company is equitably estopped from asserting that the FMLA does not cover him based on its representations and his detrimental reliance. Southern Company contends Mr. Tatum cannot show that he reasonably relied on any alleged Southern Company misrepresentation or that he took actions to his detriment. Mr. Tatum counters that the record shows that had he known the FMLA did not cover him, he would have returned to work.
For the purposes of summary judgment analysis, the Court will assume that Mr. Tatum established the first two elements-that Southern Company made representations that the FMLA covered Mr. Tatum and that Mr. Tatum had reason to believe those representations. Given the rulings the court has made striking portions of Mr. Tatum's April 11 affidavit, there is nothing to create a disputed issue of fact as to the third or the fourth elements of his equitable estoppel claim.
Alternatively, the court could stretch to its limit the rule that summary judgement evidence must be viewed in the light most favorable to Mr. Tatum. In this vein, the court could choose not apply the sham affidavit doctrine to Mr. Tatum's April 11 affidavit. The court could find that a disputed fact issue as to the third element, reliance, was raised by Mr. Tatum's self-serving statements about his own state of mind when he stated that he reasonably relied on Defendant's representations. Mr. Tatum still fails to present any evidence that raises a genuine dispute of material fact as to the fourth element-that he took detrimental actions based on Southern Company's representations.
Mr. Tatum points vaguely to the Operations Bulletin issued on January 26, 2017, which discusses safety procedures. First the Operations Bulletin, without more, does not show Mr. Tatum would have returned to work after he saw the bulletin had he known he was not entitled to FMLA coverage. It merely shows that Southern Company issued an Operations *701 Bulletin on January 26, 2017 concerning the subject of "Taking Clearance/LOTO on Single Molded Case Breakers & Disconnects Less than 600 Volts." [See Dkt. #20, Ex. 8]. No evidence indicates that Southern Company terminated Mr. Tatum based on his absence from the meeting at which this topic was discussed. Mr. Tatum's statement that had he attended and tried to explain why he did not report the alleged safety violation for approximately five weeks, Southern Company would not have terminated him is conclusory speculation that raises no issue of material fact. Southern Company terminated him, in part, because Mr. Tatum violated company policy by not reporting what he believed to be a safety violation for almost five weeks-a fact unchanged by whether Mr. Tatum could, would, or should have attended a meeting on January 26, 2017.
Mr. Tatum also mentions an "Equipment Clearance Log," which he appears to allege shows that he confirmed Mr. Goodman's alleged safety violation by signing the equipment clearance log on January 18, 2017. Mr. Tatum does not dispute that January 20, 2017 was the date on which he first alerted Southern Company to what he believed to be a safety violation that he had observed on December 17, 2016. Further, this Equipment Clearance Log is wholly unrelated to Mr. Tatum's FMLA leave. Mr. Tatum makes no arguments about how he would not have signed this log but for Southern Power's FMLA representations-nor could he, as the log indicates he checked equipment clearance and signed the log on January 18-two days before he decided to take leave.
Mr. Tatum's April 11 Affidavit raises no issue of material fact concerning whether he acted to his detriment. For example, the portions of paragraphs 8, 10, 14, and 16 of his April 11 Affidavit that were struck merely state in slightly different ways that if he had only known that he was not protected by the FMLA he would have returned to work. But there is no evidence that he was fired for taking leave because of his medical condition. In fact it appears that leave had been approved and another employee had even been tasked with taking necessary paperwork to him.[3]
In paragraph 9 of the April 11 Affidavit, Mr. Tatum asserts that because he thought he was protected by FMLA, he called the Southern Company Compliance Hotline on January 20 to report the incidents that previously occurred on that day (the sarcastic comment and the subsequent meeting). But Mr. Tatum made this call at 12:30 p.m.-hours before he informed Southern Company that he had decided to take leave and possibly before his doctor's appointment.[4] The call is also unrelated to his medical condition.
In paragraph 13, Mr. Tatum asserts that because he thought his job was "protected and as part of [his] commitment to [himself] that [he] would do everything [he] could possibly to keep [his] job," he invited Mr. Ray to meet him for lunch during his leave. But there is no hint that Southern Company fired him for inviting somebody for lunch or even for his behavior at lunch.
*702 Actions Mr. Tatum took while he was on leave do not show that he would have not taken leave at the outset but for Southern Company's representations-particularly when Mr. Tatum provides another reason for his action during leave: "commitment to myself that I would do everything I could possibly do to keep my job." Nor do these actions show Mr. Tatum would have returned to work early but for his belief that the FMLA covered him.
Implicit in Mr. Tatum's affidavit and his arguments is his mistaken theory: If he was an FMLA eligible employee on approved FMLA leave he could not be fired for any past inappropriate conduct nor for any acts committed while on leave. But a grant of FMLA leave is not a talisman that need only be waved about to protect an employee from prior actions that are unrelated to his medical condition or his leave. Nor is the FMLA a carte blanche grant of privilege for an employee to act however he pleases while on FMLA leave.
Because Mr. Tatum does not raise a genuine issue of material fact as to whether he took a detrimental action, in reliance upon any representation Southern Company made about FMLA coverage, the Court finds that Southern Company is not equitably estopped from asserting a non-coverage defense to Mr. Tatum's FMLA claims. Since the FMLA does not cover Mr. Tatum, the Court dismisses his FMLA interference and retaliation claims.
c. Mr. Tatum's breach of contract claim is dismissed because Southern Company's FMLA policy is not a contract.
In exercising its supplement jurisdiction over Mr. Tatum's state law breach of contract claim, this Court must apply Texas law. See 28 U.S.C. § 1367(a). Texas law governs because Mr. Tatum is an employee working in Texas, who does not allege his employment is governed by a contract-much less a contract with a choice of law provision requiring application of non-Texas law-and does not cite any federal law as the basis for this contract claim.
Absent a contract or statute to the contrary, employment in Texas is at-will. And, in Texas, unilaterally issued employment manuals, handbooks, or policies do not, without more, constitute written contracts. See Zimmerman v. H.E. Butt Grocery Co. , 932 F.2d 469, 471 (5th Cir. 1991). Absent any express reciprocal agreement, "policies or employee handbooks constitute no more than general guidelines and do not create contractual rights in employees." Heggemeier v. Caldwell Cty. , 826 F.3d 861, 871 (5th Cir. 2016).
Although an employee handbook, manual, or policy may modify an existing contract, it does not, by itself, constitute a contract. See Aiello v. United Air Lines, Inc. , 818 F.2d 1196, 1198 (5th Cir. 1987). The four corners of the document govern a court's determination as to the intent of the parties. See State Farm Lloyds v. Page , 315 S.W.3d 525, 527 (Tex. 2010) ("Our analysis of the policy is confined within the four corners of the policy itself."). Here, the express language of the Southern Company's FMLA Policy shows it is not a contract and that the parties do not intend for it to be a contract. The FMLA Policy unequivocally states, "[n]othing in this policy shall give rise to any contractual rights to employment, benefits or other terms and conditions of employment."
Mr. Tatum failed to respond to Southern Company's contention that the breach of contract claim should be dismissed. He presents no evidence-and does not even assert-that he had an employment contract with Southern Company or that the *703 FMLA policy created or modified any employment contract with Southern Company. In fact, his failure to respond is taken as an admission that he "does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." See Local Rule 7(d).
The summary judgment evidence establishes that Southern Company did provide Mr. Tatum with leave-which companies are allowed to do. Granting an employee leave does not bring a workplace of less than 50 employees under the ambit of the FMLA. To the extent Mr. Tatum argues that he is entitled to return to his job under Southern Company's leave policy-regardless of his actions-that argument lacks merit. Even for an employee eligible for coverage under the FMLA, his employer's FMLA or medical leave policy does not shield that employee from the consequences of his continued poor performance or from his decision to conceal an alleged safety violation until an opportune moment. See Mauder , 446 F.3d at 585. More to the point, Mr. Tatum has not cited, and the Court has not found any, Texas law that supports the proposition that granting medical leave to an employee modifies this State's at-will employment doctrine. The only purported evidence of the existence of a contract that might allow Mr. Tatum to avoid the employment at-will doctrine is Southern Company's FMLA Policy. As a matter of Texas law, this policy is not a contract. Mr. Tatum's breach of contract claim is dismissed.
IV. Conclusion
Mr. Tatum is not an "eligible employee" under the FMLA and makes a valiant effort to bring his case under the doctrine of equitable estoppel. A plaintiff does not have to prove that an employer intended to make a false representation for a defendant to be equitably estopped from denying him FMLA coverage. Minard , 447 F.3d at 359. And if there were a theory based solely on a failure to actually read a request for medical leave from an employee at a plant with fewer than fifty employees, or based upon lack of attention to detail by, or carelessness on the part of, a company's general counsel and human resources department in the wording of policy manuals or communications to employees, then Mr. Tatum might have a case. But equitable estoppel in an FMLA case has the same requirement as equitable estoppel in other contexts; plaintiff must show he relied on a misrepresentation to his detriment.
While Mr. Tatum repeatedly says he "relied" on Southern Company's representations, he fails to raise a genuine issue of material fact as to his detrimental reliance. He fails to present evidence of a detrimental act he took because on Southern Company's arguably misleading representations about his FMLA status. His assertions that he would have returned to work immediately after his doctor's appointment, would not have sent the texts to Ms. Jackson on January 20, would have returned to work earlier, would not have asked Mr. Ray to lunch, or would have attended the January 26, 2017 Operations Bulletin meeting, do not in any way address, let alone rebut, the reasons for which he was fired.
Southern Company presented Mr. Tatum's history of recalcitrance, his disruptive remarks, and refusal to correct his behavior. Perhaps worst of all was the incident in which Mr. Tatum claims to have observed a life-threatening condition but for weeks kept it "in his pocket." Mr. Tatum made no attempt to deny that, in his mind, keeping those photographs for "job security" was more important than immediately reporting what he claimed five weeks later was a serious risk of death *704 or serious injury to his co-workers.[5] The FMLA is not protection for such conduct.
Mr. Tatum has simply failed to present any genuine issue of material fact as to his claims under the FMLA that would justify granting his motion for partial summary judgment or justify denying Southern Company's motion for summary judgment. Likewise, Southern Company's FMLA Policy is not a contract under Texas Law. Mr. Tatum did not plead or provide evidence of any other alleged contract. In view of the employment at-will doctrine of Texas, his state law claim also fails.
IT IS THEREFORE ORDERED that Defendant Southern Company Services, Inc.'s Motion for Summary Judgment [Dkt. #19] is GRANTED and that Plaintiff Tatum's Motion for Partial Summary Judgment [Dkt. #20] is DENIED .
So ORDERED and SIGNED this 7 day of August, 2018.

Unless otherwise noted, the facts are from Defendant Southern Power's Motion for Summary Judgment-facts that Mr. Tatum did not dispute in his Response or in his own Motion.

The parties did not present evidence concerning whether Mr. Tatum's request for leave was approved before his termination on February 2, 2017. The parties effectively treat Mr. Tatum's January 20, 2017 call to Ms. Jackson at approximately 3:00 p.m. as the start time for his leave. Evidence indicates that Southern Power treated the time from January 20-January 23, 2017 as Mr. Tatum's PTO as opposed to FMLA leave. See Dkt. #22, Ex. D.

As of February 1, 2017, Southern Power's approval of Mr. Tatum's FMLA leave was still pending, but the parties effectively treat Mr. Tatum's January 20, 2017 call to Ms. Jackson about taking FMLA leave as the start date for his leave.

The parties dispute as to whether Mr. Tatum placed this call before or after his doctor's appointment. The Southern Company Compliance Hotline shows Mr. Tatum called at 12:30 p.m. The doctor's notes from the appointment are timestamped 1:47 p.m., but it is unclear if this is the time the doctor entered the notes or the time the appointment started. Mr. Tatum does not allege the time for his doctor's appointment.

Without deciding whether traditional notions of equity apply to an equitable exception to the coverage requirements of a federal statute, the Court notes that Mr. Tatum's lack of consideration for the welfare of his coworkers brings to mind equitable maxim that "he who seeks equity must do equity" and the "clean hands" doctrine.